J. A15040/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                               :             PENNSYLVANIA
                  v.                     :
                                                 :
STEPHEN NOEL JESSEE,              :           No. 1075 MDA 2017
                                                 :
              Appellant          :

Appeal from the PCRA Order, June 5, 2017,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0003413-2013

BEFORE:  PANELLA, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED AUGUST 09, 2018**

Appellant, Stephen Noel Jessee, appeals from the June 5, 2017 order entered by the Court of Common Pleas of York County denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] After careful review, we affirm.

A previous panel of this court provided the following factual and procedural history:

> On February 8, 2013, Sergeant Lisa Layden interviewed K.W. at the York County District Attorney's Office. During that interview, K.W. reported that her stepfather, [a]ppellant, had sexually abused her on numerous occasions. K.W. reported that [a]ppellant began having sexual contact with her when she was fourteen years old, and that the two had sexual intercourse when she was approximately fifteen years old. Specifically, K.W. stated that the

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

sexual intercourse took place at the family's home in Spring Grove, Pennsylvania and also in a trailer at Conewago Isle Campground in Dover, Pennsylvania. K.W. further explained that she and [a]ppellant have a daughter together, that the two shared custody of the child, and that she was concerned for her daughter's safety.

On April 5, 2013, Sergeant Layden filed a criminal complaint charging [a]ppellant with involuntary deviate sexual intercourse [("IDSI")], statutory sexual assault, aggravated indecent assault, indecent assault, and corruption of minors.[Footnote 1] On May 8, 2013, K.W. testified at [a]ppellant's preliminary hearing before Magisterial District Judge Thomas Reilly. K.W.'s testimony tracked the statement that she had given to Sergeant Layden earlier. K.W. testified that [a]ppellant "sexually molested [her] from age 14 until [she] was 17." K.W. also testified that she and [a]ppellant had sexual intercourse at the family's home in Spring Grove, Pennsylvania when she was fourteen years old.

> [Footnote 1] 18 Pa.C.S. §§ 3123(a)(7), 3122.1, 3125(a)(8), 3126(a)(8), and 6301(a)(1), respectively.

On March 31, 2014, [a]ppellant proceeded to a jury trial. On that same day, the Commonwealth called K.W. as a witness. K.W. contradicted her earlier statement to police and her preliminary hearing testimony, and testified that she and [a]ppellant did not have sexual contact until she was seventeen years old. The Commonwealth then proceeded to question K.W. about her prior inconsistent testimony, which she had given at [a]ppellant's preliminary hearing:

> **Q:** So at [the preliminary hearing] you indicated that you were 14 when this began, is that correct?
>
> **A:** Yes.

**Q:** Okay. And was that the truth? Were you under oath when you indicated that?

**A:** Yes.

**Q:** And today you are testifying that this happened when you were 17 1/2?

**A:** Yes.

**Q:** Why did you say 14 at the time?

**A:** At the time I had believed what others had told me.

**Q:** You had believed what others told you?

**A:** Yes.

**Q:** And who else was telling you something?

**A:** My ex-boyfriend and my grandmother.

**Q:** What did they tell you?

**A:** They told me that [a]ppellant had been having sex with me since I was 14, and I believed it.

**Q:** Okay. So you don't remember having sex?

**A:** No.

Notes of Testimony [], 3/31/2014 at 75-76.

On April 1, 2014, notwithstanding K.W.'s testimony, the jury found [a]ppellant guilty of [IDSI], statutory sexual assault, aggravated indecent assault, indecent

assault, and corruption of minors. On April 8, 2014, [a]ppellant filed a motion for judgment of acquittal. Therein, [a]ppellant argued that the jury's verdict was "against the weight and sufficiency of the evidence presented at trial." On August 22, 2014, the Commonwealth filed a notice of its intent to seek imposition of a ten-year mandatory minimum sentence. *See* 42 Pa.C.S. § 9718(a)(1) (providing that a person convicted of [IDSI] when the victim is less than sixteen years of age shall be sentenced to a mandatory ten-year term of imprisonment).

. . . . The trial court . . . sentenced [a]ppellant to ten to twenty years' imprisonment for [IDSI], the mandatory minimum sentenced prescribed by 42 Pa.C.S. § 9718(a)(1).[Footnote 2]

> [Footnote 2] The trial court also imposed concurrent sentences of six to fourteen months' imprisonment for statutory sexual assault, two to four years' imprisonment for aggravated indecent assault, twelve months' probation for indecent assault, and twelve months' probation for corruption of minors.

*Commonwealth v. Jessee*, No. 1520 MDA 2014, unpublished memorandum at *1-4 (Pa.Super. filed August 31, 2015) (citations omitted).

Appellant filed a direct appeal of his judgment of sentence on September 10, 2014. On August 31, 2015, this court vacated appellant's judgment of sentence and remanded to the trial court for resentencing in light of the United States Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), and its state progeny, in this case, *Commonwealth v. Wolfe*, 106 A.3d 800 (Pa.Super. 2014), *affirmed*, 140 A.3d 651 (Pa. 2016). As noted by the previous panel on direct appeal, this court "held that section

9718 was facially unconstitutional because the elements of the 'proof at sentencing' provision required a trial judge, rather than a jury, to make factual findings by a preponderance of the evidence, and not beyond a reasonable doubt." ***Jessee***, No. 1520 MDA 2014 at *12, citing ***Wolfe***, 106 A.3d at 805.

The trial court resentenced appellant on October 25, 2016, to 3-6 years' imprisonment followed by 2 years' probation. Appellant did not file a direct appeal from the October 25, 2016 judgment of sentence. On October 26, 2016, however, appellant filed a petition pursuant to the PCRA. The PCRA court stayed appellant's sentence pending the PCRA hearing on December 5, 2016. The PCRA court denied appellant's petition after a hearing was held on June 5, 2017.

Appellant filed a notice of appeal to this court on July 3, 2017. On July 5, 2017, the PCRA court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant timely complied on July 25, 2017. The PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a) on January 18, 2018.

Appellant raises the following two issues for our review:

> I. Whether the PCRA court erred in not finding counsel ineffective for failing to call appellant to testify, which would have lent credence to the victim's recantation of her accusations?
>
> II. Whether the PCRA court erred in not finding counsel ineffective for failing to fully develop on cross examination the victim's reason for providing false statements to police?

Appellant's brief at 4 (capitalization omitted).

PCRA petitions are subject to the following standard of review:

> "[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." **Commonwealth v. Dennis**, [], 17 A.3d 297, 301 (Pa. 2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. **Id.** at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9543(a)(2); (2) his claims have not been previously litigated or waived, **id.** § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[,]" **id.** § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [a]ppellant could have had review as a matter of right has ruled on the merits of the issue[.]" **Id.** § 9544(a)(2). "[A]n issue is waived if [a]ppellant could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." **Id.** § 9544(b).

**Commonwealth v. Treiber**, 121 A.3d 435, 444 (Pa. 2015).

Under the PCRA, an individual is eligible for post-conviction relief if the conviction was the result of "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process, that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S.A. § 9543(a)(2)(ii). When considering whether counsel was ineffective, we are governed by the following standard:

> [C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. **Strickland v. Washington**, 466 U.S. 668, [] (1984). This Court has described the **Strickland** standard as tripartite by dividing the performance element into two distinct components. **Commonwealth v. Pierce**, [], 527 A.2d 973, 975 (Pa. 1987). Accordingly, to prove counsel ineffective, the petitioner must demonstrate that (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. **Id.** A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.
>
> **Commonwealth v. Busanet**, [], 54 A.3d 34, 45 (Pa. 2012) (citations formatted). Furthermore, "[i]n accord with these well-established criteria for review, [an appellant] must set forth and individually discuss substantively each prong of the **Pierce** test." **Commonwealth v. Fitzgerald**, 979 A.2d 908, 910 (Pa.Super. 2009).

**Commonwealth v. Perzel**, 116 A.3d 670, 671-672 (Pa.Super. 2015), **order vacated on other grounds**, 166 A.3d 1213 (Pa. 2017).

Appellant alleges ineffective assistance of counsel in both of his issues on appeal. In his first issue, appellant contends that the PCRA court erred when it did not find appellant's trial counsel, Kevin J. Hoffman, Esq. ("Attorney Hoffman"), ineffective for advising appellant not to testify on his

own behalf as a means of lending credence to K.W.'s recantation of some of her accusations against appellant. For the following reasons, we disagree.

A defendant's right to testify on his or her own behalf at trial is a fundamental right guaranteed by both the United States and Pennsylvania Constitutions. *Commonwealth v. Baldwin*, 8 A.3d 901, 902-903 (Pa.Super. 2010), *affirmed*, 58 A.3d 754 (Pa. 2012), citing *Commonwealth v. Nieves*, 746 A.2d 1102, 1105 (Pa. 2000); Pa. Const. Art. I, § 9; U.S. Const. amend. VI. In the context of a claim of ineffective assistance of counsel relating to counsel advising a criminal defendant not to testify on his or her own behalf, we are governed by the following standard:

> The decision whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Michaud*, 70 A.3d 862, 869 (Pa.Super. 2013), quoting *Nieves*, 746 A.2d at 1104.

In the instant case, appellant failed to demonstrate that Attorney Hoffman interfered with his right to testify or that Attorney Hoffman provided appellant with advice so unreasonable as to "vitiate a knowing and intelligent decision to testify on his own behalf." *See Michaud*, 70 A.3d at

869. In fact, appellant fails to explain how Attorney Hoffman's advice was unreasonable. As noted by the PCRA court,

> From our reading of the PCRA hearing transcript, we were able to glean that, had he testified at trial, [a]ppellant would have offered testimony in agreement with the victim's recantation. It is hard to divine that [a]ppellant's testimony would have added anything new, or, to address [a]ppellant's concerns, conveyed the whole story. It is axiomatic that a credible witness can galvanize the testimony of a comparatively weaker witness; however, the jury was confronted with a situation in which there was a child produced by [a]ppellant and the victim. The birth of that child allowed the jury to determine that sexual intercourse occurred, at a minimum, around the time that the victim was seventeen-and-a-half. It seems unlikely that a jury would have viewed [a]ppellant as a credible buttressing witness under the circumstances. [A]ppellant not only had a great stake in the outcome of the case, but it was plainly obvious to the jury that he was guilty of the corruption of minors charge. Moreover, we agree with Attorney Hoffman's assessment that [a]ppellant testifying would have opened the door to rebuttal testimony from the victim's grandmother, [E.F.]. . . . The Commonwealth would surely have sought to admit [E.F.'s] testimony regarding sexualized behavior she saw [a]ppellant exhibit towards the victim to attack any statements by [a]ppellant that his sexual relationship with the victim did not begin until she was seventeen-and-a-half and this would have been admissible. Thus, the alternative strategy suggested, of offering [a]ppellant's testimony, would not have offered a **substantially** greater chance of success and might, indeed, have harmed [appellant.]

PCRA court opinion, 1/18/18 at 9-10 (emphasis in original). Moreover, appellant stated to the trial court that he understood that he had the right to

testify on his own behalf and that he nevertheless decided not to testify. (**See** notes of testimony, 3/31/14 at 106-108.)

Accordingly, we find that Attorney Hoffman had an objective, reasonable basis in advising appellant not to testify on his own behalf given that his testimony would involve his admitting to engaging in a sexual relationship with his then-17-year-old stepdaughter, in addition to the fact that his testimony would open the door for E.F.'s testimony on rebuttal. The record also reflects that it was ultimately appellant's decision not to testify on his own behalf. Therefore, appellant's first issue must fail.

In his second issue, appellant contends that the PCRA court erred when it did not find Attorney Hoffman to be ineffective for "failing to fully develop on cross examination the victim's reason for providing false statements to police." (Appellant's brief at 12.) For this issue, we adopt the PCRA court's analysis explaining that Attorney Hoffman had a reasonable basis for declining to further develop the victim's reason on cross-examination for providing false statements to the police.

> [Attorney Hoffman] had [K.W.] repeat on cross-examination what she had already stated as a hostile witness three times on direct, which was that the memories of abuse were foisted upon her by others. We see no **substantially** greater chance at success from [a]ppellant's suggested course of more probing cross-examination.

PCRA court opinion, 1/18/18 at 13.

Accordingly, we find that appellant failed to satisfy the second prong in

*Pearce*.  Appellant's second issue, therefore, must fail.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2018